9th Circuit No. 24-3429

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff-Appellee, <br><br><br> v. <br><br> RUSLAN KIRILYUK, <br><br> Defendant-Appellant. | U.S. District Court Case No. 2:14-cr-00083-DJC-4 (Eastern District of California) |

### Appellant's Opening Brief

United States District Court
Eastern District of California
Hon. Daniel J. Calabretta, United States District Judge


Gene D. Vorobyov, California Bar No. 200193
2309 Noriega Street, # 46
San Francisco, CA 94122
(415) 425-2693, gene.law@gmail.com

Attorney for Appellant
RUSLAN KIRILYUK

- 1 -

# Table of Contents

Table of Authorities……………………………..……..…….iii

Statement of Issue Presented for Review………………...…..2

Jurisdiction and Timeliness………………………….…..…….3

Appellant's Custody Status………………………………….3

Statement of the Case…………………………………….….3

Statement of Facts……………………………….…..……….4

Summary of Argument …………………………..………….6

Argument

The District Court Erred in Enhancing Kirilyuk's Offense Level Based on "Intended Loss" Because the Fraud Guideline Definition of Loss Unambiguously Refers Only to "Actual Loss;" the "Intended Loss" Directive Comes only from Guideline Commentary that Erroneously Expanded the Fraud Guideline Scope

    A.    Factual Background and Standard of Review…………………………………………7

    B.    The District Court Erred in Relying on Intended Loss Because USSG § 2B1.1 Use of "Loss" Unambiguously Refers to Actual Loss

        1.    Guideline commentary cannot expand the reach of guideline provisions…….8

        2.    Application Note 3(A), which defines loss under USSG 2B1.1 as the greater of actual or intended loss, improperly expands the reach of the guideline; the

plain meaning of loss here is actual loss..............................................12

3.   The Fourth Circuit's 2-1 decision in *Boler* does not compel a different result; this Court should instead follow *Banks* and the *Bowler* dissent .....................................................14

4.   This Court should vacate Kirilyuk's sentence and remand for resentencing without the intended loss enhancement..............…..........18

5.
Conclusion................................................................19

Certificate of Related Cases

Certificate of Word Count

Addendum to the Brief

# Table of Authorities

## Cases

*U.S. Supreme Court Cases*

Kisor v. Wilkie,
588 U.S. 558 (2019)……………………………………6, 9-14, 17

Stinson v. United States
508 U.S. 36 (1993)…………………………………9-10, 13-17

*Circuit Court Case*

United States v. Banks
55 F.4th 246 (3d Cir. 2022)………………………7-8, 12-15, 17

United States v. Boler
15 F. 4th 316 (4th Cir. 2024)……………………………………14

United States v. Castillo,
69 F.4th 648 (9th Cir. 2023)…………………...……………7-9, 11-13

United States v. Kirilyuk
29 F. 4th 1128 (9th Cir. 2022)………………………………5-10, 14

United States v. Klensch
87 F.4th 1159 (9th Cir. 2023)……………………...……………18

United States v. Korotkiy
118 F. 4th 1202 (9th Cir. 2024)………………………………12, 13

United States v. Smith
79 F. 4th 790 (6th Cir. 2023)……………………………………18

United States v. Warren
980 F.2d 1300 (9th Cir. 1992)……………………………………7

United States v. You
74 F.4th 378 (6th Cir. 2023)............................................18

**Federal Statutes**

18 U.S.C.§ 3742.............................................................3

28 U.S.C.

    § 1291......................................................................3

    § 3231......................................................................3

**Secondary Sources**

U.S.S.G.

    § 2B1.1.............................................................passim

## Statement of Issue Presented for Review

This is an appeal after a resentencing hearing following a successful appeal, *United States v. Kirilyuk*, 29 F.4th 1128 (9th Cir. 2022). In resentencing Kirilyuk, the district court calculated the loss enhancement under U.S. Sentencing Guideline 2B1.1(b) using the intended loss of $3.4 million instead of the actual loss of $1.4 million.[1]

The question presented for review is whether the district court erred in calculating Kirilyuk's loss enhancement using intended loss because § 2B1.1(b) unambiguously refers to only actual loss and the intended loss appears only in § 2B1.1 commentary that unlawfully expanded that guideline's reach?

///

///

///

///

_____

[1] All further statutory references are to the U.S. Sentencing Guidelines

- 2 -

## Jurisdiction and Timeliness

This appeal is from an amended final judgment filed June 4, 2024. (ER-003). Kirilyuk filed a timely notice of appeal June 4, 2024. (ER-040.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The district court had jurisdiction under 28 U.S.C. § 3231.

## Appellant's Custody Status

Kirilyuk is in the Government's custody serving his sentence. According to the Bureau of Prison's website, his projected release date is January 16, 2040. Kirilyuk is not out on bail pending completion of this appeal.

## Statement of the Case

A jury convicted Kirilyuk of wire and mail fraud, failure to appear, and identity theft. (ER-058). The district court sentenced Kirilyuk to a 264-month prison term and a 36-month supervised release term. (ER-055). In the first appeal (19-10447), this Court reversed Kirilyuk's sentence

for various legal errors and remanded for a new sentencing hearing. *Kirilyuk*, 29 F.4th 1128.

Then, on remand, the district court re-sentenced Kirilyuk to a 188-month concurrent terms on the mail and wire fraud, and failure to appear counts, a consecutive 24-month term for failure to appear, and a consecutive 24-month sentence for identity theft, for a total of 236 months. (ER-022).

## Statement of Facts[2]

For three years, Kirilyuk and four co-participants ran an international credit card fraud scheme. The scheme worked in several steps. First, the conspirators stole account information from nearly 120,000 American Express credit and debit cards. *Kirilyuk*, 29 F.4th at 1132.

///

///

---

[2]     The following statement of facts is taken from this Court's opinion in *Kirilyuk*, 29 F.4th at 1132.

- 4 -

Then, the conspirators created dozens of fake online businesses using stolen identities and opened merchant accounts for those businesses. *Id.* In setting up these fake businesses, the group used identities of three Russian nationals who traveled to the United States on student visas and of 220 California high school students whose transcripts were previously stolen. *Id.*

Next, one of the coparticipants in Russia used the false merchant accounts to make fraudulent charges on the stolen American Express cards. The charges were typically $15 to $30 to avoid detection by account holders. Coparticipants also set up phone lines for the fake businesses to receive complaints from the American Express cardholders about the fake charges. By issuing refunds to cardholders who complained, the conspirators would deter those cardholders from notifying American Express about the fraud. *Kirilyuk, 29 F.4th at 1132.*

///

///

- 5 -

Then, after receiving funds for fraudulent charges, the coparticipants transferred them from the fake merchant accounts to bank accounts, from which they withdrew the money using ATMs and wire transfers. *Kirilyuk*, 29 F.4th at 1132.

This scheme resulted in an actual loss of $1.4 million and the intended loss of $3.4 million. *Kirilyuk*, 29 F.4th at 1132.

## Summary of Argument

The district court erred in calculating the loss enhancement under § 2B1.1 using the intended loss amount of $3.4 million. The term "loss" used in § 2B1.1 refers to only actual loss, which here is $1.4 million and would result in a lesser advisory Guidelines range. The district court's use of intended loss is based on guideline commentary, which unlawfully expanded that guideline scope.[3] *Kisor v.*

---

[3] In 2024, the loss definition was moved from guideline commentary to the notes to the loss table in § 2B1.1(b)(1). But since Kirilyuk committed his crimes and was resentenced before the change into effect, the change would

*Wilkie*, 588 U.S. 558 (2019); *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022); see also *United States v. Castillo*, 69 F.4th 648 (9th Cir. 2023); *United States v. Kirilyuk*, 29 F.4th 1128 (9th Cir. 2022). This Court should vacate Kirilyuk's sentence and remand for resentencing.

## Argument

### The District Court Erred in Enhancing Kirilyuk's Offense Level Based on "Intended Loss" Because the Fraud Guideline Definition of Loss Unambiguously Refers Only to "Actual Loss;" the "Intended Loss" Directive Comes only from Guideline Commentary that Erroneously Expanded the Fraud Guideline Scope

## A.    Factual Background and Standard of Review

The updated presentence report recommended calculation of the Guideline offense level based on the intended loss of $3.4 million; the actual loss is $1,418,959. (PSR ¶ 7).

The defense objected to the use of "intended loss." (ER-11-27-28; *Banks*, 55 F.4th 246; *cf. United States v. Kirilyuk*,

_____

not apply to his case. *United States v. Warren*, 980 F.2d 1300, 1304 (9th Cir. 1992).

- 7 -

29 F.4th 1128 (9th Cir. 2022). The defense argued that the term "loss" used in § 2B1.1 refers unambiguously to actual loss, the directive permitting to use intended loss came from invalid commentary to that guideline, and that the loss enhancement should be 14, not 16. (ER-029).

The district court overruled the objection and adopted intended loss of $3.4 million as a basis for a 16-level increase. (ER-015-16).

Whether the guidelines allow the use of "intended loss" instead of *actual loss* is a legal question, which this Court reviews de novo. *Banks*, 55 F.4th at 251, n. 29; see also *KIrilyuk*, 29 F.4th at 1136 (reviewing de novo legal validity of § 2B1.1 commentary).

**B.    The District Court Erred in Relying on Intended Loss Because USSG § 2B1.1 Use of "Loss" Unambiguously Refers to Actual Loss**

**1.    Guideline commentary cannot expand the reach of guideline provisions**

For fraud offenses, "[i]f the loss exceeded $6,500," U.S.S.G. § 2B1.1(b)(1) provides for incremental offense-level increases based on the dollar amount of the loss. Here,

using the intended loss of $3.4 million resulted in a 16-level enhancement. (PSR ¶ 34; § 2B1.1(b)(1)(I)). Had the district court used the actual loss, the offense level increase would have been 14, not 16. § 2B1.1(b)(1)(J). Reducing the final offense level by 2 (from 36 to 34, with criminal history category I), would reduce the range on the non-identity- theft counts from 188-235 months to 151-188 months. The district court imposed a 188-month sentence on those counts.

The basis for the district court's calculation was not § 2B1.1, which does not explicitly define "loss." Instead, the court relied on commentary 3(A), which defines "loss" as the greater of the actual or intended loss. (ER-013).

Yet as this Court has recently held, Sentencing Commission is not permitted to *expand* the reach of the guideline text by using commentary. *Castillo*, 69 F.4th 648; see also *Kirilyuk*, 29 F.4th 1134-39.

The reason for this rule lies in the joint application of two U.S. Supreme Court cases – *Stinson v. United States*, 508 U.S. 36, 38–41 (1993) and *Kisor*, 588 U.S. 558. This

Court addressed the interplay between those two cases in *Castillo*.  Under *Stinson*, Guideline commentary that interprets or explains the guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with or a plainly erroneous reading of the guideline.  *Stinson*, 508 U.S. at 39; *Castillo*, 69 F.4th at 655.

Though (as will be explained in a moment), the deference to guideline commentary under *Stinson* was broader before *Kisor*, in *Kirilyuk*, this Court cited *Stinson* in holding that guideline commentary to § 2B1.1 interpreting "loss" for calculating offense level for credit card fraud was not authoritative because that commentary was plainly inconsistent with the meaning of "loss" under § 2B1.1. *Kirilyuk*, 29 F.4th at 1138–39.

Moreover, in *Kisor*, the arguably broader deference to guideline commentary under *Stinson* was narrowed.  Under *Kisor*, any deference to an agency's interpretation of its own rule can arise only if that rule is genuinely ambiguous. *Kisor*, 588 U.S. 558; *Castillo*, 69 F.4th at 655.  *Kisor*

reasoned that even if a rule is ambiguous, not all reasonable agency constructions of the rule are entitled to deference. *Kisor*, 588 U.S. 558; *Castillo*, 69 F.4th at 655. But, more importantly, before concluding that a rule is genuinely ambiguous, a court must exhaust all the traditional tools of construction. *Id*. If uncertainty does not exist after exhausting those tools, there is no plausible reason for deference. *Id*.

*Castillo* held that the narrower deference standard under *Kisor* applies to Guideline commentary. *Castillo*, 69 F.4th at 655–56. Under that standard, *Castillo* held that the reach of guideline 4B1.2 cannot be expanded to inchoate offenses because the plain text of the guideline refers to only certain specific offenses meeting the definition of "controlled substance offences," which, under statutory construction canons, directs an inference that Congress intended to exclude other crimes from that specific definition. *Castillo*, 69 F.4th at 658.

///

**2. Application Note 3(A), which defines loss under USSG 2B1.1 as the greater of actual or intended loss, improperly expands the reach of the guideline; the plain meaning of loss here is actual loss**

Though this Court has not yet addressed whether guideline commentary to § 2B1.1 can lawfully expand the definition of "loss" in that guideline, the Third Circuit answered that question with a "no" – application note 3(a) improperly expanded the scope of § 2B1.1's definition of loss to include intended loss.

*Banks* reached that conclusion by applying the *Kisor* analysis to § 2B1.1 and note (3)(A). *Banks*, 255 F. 4th at 255-56. The analysis begins with the plain language of the guideline it interprets. *Banks*, 55 F.4th at 256–57. *Banks* reasoned that this fact alone shows that the Commission did not intend to include "intended" loss in the definition. *Id*. at 257.

That is so because there is a presumption that a word in a statutory definition carries its ordinary meaning. *Banks*, 55 F.4th at 257; *accord United States v. Korotkiy*, 118

F. 4th 1202, 1210 (9th Cir. 2024) ("Unless a statute provides an explicit definition, we generally give words )their ordinary, contemporary, common meaning").

*Banks* then went through various dictionary definitions of "loss," none of which suggested that ordinary meaning of loss include intended loss. *Banks*, 55 F.4th at 257–58. Instead, those definitions point to actual loss as the ordinary meaning of loss. *Id*. Thus, because application note 3(A) expanded the definition of loss beyond the plain text of the Guideline, *Banks* found the commentary not authoritative and remanded for resentencing without use of intended loss enhancement. *Id*. at 258.

Here, for several reasons, this Court should follow *Banks*. *Banks* faithfully applied the *Kisor* framework.

*Banks* also tracks with Castillo, which held that guideline commentary is subject to a more stringent standard for deference. *Castillo*, 69 F.4th at 655.

It also mirrors Kirilyuk, which, applying a broader deference under *Stinson*, held that guideline commentary

- 13 -

defining "loss" in credit card cases as an automatic $500 per card was invalid because it contradicted the ordinary meaning of loss in § 2B1.1 *Kirilyuk*, 29 F.4th at 1137–38.

Here, too, as *Banks* aptly described, the ordinary meaning of "loss" is actual loss, which makes the intended loss used in the commentary plainly inconsistent with the guideline definition of loss. This Court should so hold.

### 3. The Fourth Circuit's 2-1 decision in *Boler* does not compel a different result; this Court should instead follow *Banks* and the *Boler* dissent

Finally, while we acknowledge that the 2-judge majority in *United States v. Boler*, 115 F. 4th 316 (4th Cir. 2024) recently held that note 3(A) is entitled to deference under *Kisor*, the Court should not follow *Boler* majority.[i] Instead, the dissent in *Boler* has the better argument. And this commentary is not authoritative.

In finding this guideline commentary authoritative under *Kisor*, the *Boler* majority applied the *Kisor* framework to note 3(A) to § 2B1.1, but found the definition of loss genuinely ambiguous. *Boler* cited multiple dictionary

definitions of "loss" only as proof that loss can mean different things in different contexts. *Boler*, 115 F. 4th at 324. The court also saw additional proof of ambiguity in the relevant conduct guideline and the need to avoid unwarranted sentencing disparities. *Boler*, 115 F. 4th at 325-26. And the court ultimately found that because the guideline is genuinely ambiguous, the Sentencing Commission's interpretation was within the zone of ambiguity and implicated the commission's expertise, deference to the commentary 3(a) definition of loss to include intended loss was proper. *Boler*, 115 F.4th at 328.

The majority's application of *Kisor* to this guideline commentary is problematic for the reasons aptly laid out by dissenting judge in that case (and in *Banks*). The only reasonable inference from the various dictionary definitions of the term "loss" is that all definitions refer to an actual, realized loss. *Boler*, 115 F.4th at 330. None of the definitions cited by the Government, whether involving tangible or intangible losses, refers to anything other than

actual losses. *Id*. at 331. Similar result follows when Corpus Linguistics – another tool for interpreting the meaning of statutory language – is used. *Id*. at 332-333.

And aside from the plain text of § 2B1.1, the structure, history, and purpose of the guidelines also support interpreting loss in § 2B1.1 as unambiguously refereeing to actual loss. *Boler*, 115 F.4th at 335. For example, if the relevant conduct guideline truly expands the loss definition in § 2B1.1 to include intended loss, there would not have been a need for a "tax loss" definition in § 2T1.1(c) that specifically includes intended loss. Statutory interpretation canons counsel against a statutory reading that renders another provision superfluous. *Id*. at 335-36.

In addition, limiting loss under § 2B1.1 to actual loss does not result in *unwarranted* sentencing disparities. The dissent cited an example in which two defendants intend to steal a $1,000,000, but only one of the succeeds while the other only obtains $1,000. *Boler*, 115 F.4th at 336. Treating their crimes different for sentencing purposes does not result

in an *unwarranted* sentencing disparity because they caused different harm. *Id.*

In contrast, treating loss as the greater of intended or actual loss promotes neither fairness nor certainty. With that definition, a defendant is left wondering how a sentencing court would calculate his subjective, intended loss. *Boler*, 115 F.4th at 336. And there would be nothing fair about treating the same for sentencing purposes two defendants who may be convicted of the same crime but cause vastly different financial harm. *Id.* at 336-37.

Finally, the legislative history of the guidelines shows that the prior version of the fraud guideline included intended loss. But that provision had been deleted in 2001; it has been replaced by § 2B1.1, which survives to this day. *Boler*, 115 F.4th at 337–38. The difference in the definition of loss between the prior and the current guideline version is presumed to be intentional. *Id.*

In sum, the *Boler* dissent aligns with *Banks* and this Court's jurisprudence in applying *Kisor* and *Stinson* to

guideline commentary. This Court should follow those decisions and hold that (1) loss under § 2B1.1 is limited to actual loss and (2) application note 3(A) expanding that definition to include intended loss is not authoritative.

> **4. This Court should vacate Kirilyuk's sentence and remand for resentencing without the intended loss enhancement**

Because the district court erred in relying on intended loss enhancement to calculate Kirilyuk's advisory Guidelines range, this Court should remand for resentencing. See, e.g., *United States v. Klensch*, 87 F.4th 1159, 1166 (9th Cir. 2023) ("Errors that impact Guideline calculations typically require remand unless the Government establishes the error was harmless").

Here, the Government could make no such showing. The sentence imposed on non-identity theft counts (188 months) was the bottom of the range as calculated by the district court, but it would be at the high end of the range if the loss calculation error had not occurred. The district court made no statements showing clear intent to impose the

same sentence even if the range had been 151-188 months (not 188-235 month). (ER30-31). Remand for resentencing is required.

## Conclusion

For these reasons, this Court should vacate Kirilyuk's sentence and remand for a new sentencing hearing.

DATE: November 22, 2024      By:  s/ Gene D. Vorobyov

Attorney for Appellant
RUSLAN KIRILYUK

---

[i] See also *United States v. You*, 74 F.4th 378 (6th Cir. 2023) (using *Kisor* analysis to find the loss commentary authoritative); but see *United States v. Smith*, 79 F. 4th 790, 790-800 (6th Cir. 2023) (conc. opn. of Nalbandian, J.) (disagreeing with *You*'s analysis and conclusion that "loss" in § 2B1.1 is ambiguous).

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-3429

I am the attorney or self-represented party.

**This brief contains** | 2,862 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | | .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Gene D. Vorobyov | **Date** | 11/22/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)** | 24-3429

The undersigned attorney or self-represented party states the following:

○ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

⦿ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

> United States v. Hackett, 22-50142
> United States v. Benlevi, 22-50163
>
> All three cases raise the issue of whether it is an error to calculate a loss enhancement under USSG 2B1.1 using intended loss, instead of actual loss.

**Signature** | /s Gene D. Vorobyov | **Date** | 11/22/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**      *New 12/01/2018*

**24-3429**

# ADDENDUM TO THE

# OPENING BRIEF

United States Code Annotated
Federal Sentencing Guidelines (Refs & Annos)
Chapter Two. Offense Conduct (Refs & Annos)
Part B. Basic Economic Offenses
1. Theft, Embezzlement, Receipt of Stolen Property, Property Destruction, and Offenses Involving Fraud or Deceit (Refs & Annos)

USSG, § 2B1.1, 18 U.S.C.A.

## § 2B1.1. Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States

Currentness

**(a)** Base Offense Level:

**(1)** 7, if (A) the defendant was convicted of an offense referenced to this guideline; and (B) that offense of conviction has a statutory maximum term of imprisonment of 20 years or more; or

**(2)** 6, otherwise.

**(b)** Specific Offense Characteristics

**(1)** If the loss exceeded $6,500, increase the offense level as follows:

| Loss (apply the greatest) | Increase in Level |
| --- | --- |

(A)    $6,500 or less ............................................................................ ........no increase

(B)    More than $6,500.................................................................... ..................add 2

(C)    More than $15,000................................................................. ..................add 4

(D)    More than $40,000................................................................. ..................add 6

(E)    More than $95,000................................................................. ..................add 8

(F)    More than $150,000 ............................................................... ............... add 10

(G)    More than $250,000 ............................................................... ............... add 12

**(H)**    More than $550,000 .................................................................... ............... add 14

**(I)**    More than $1,500,000 ................................................................. ............... add 16

**(J)**    More than $3,500,000 ................................................................. ............... add 18

**(K)**    More than $9,500,000 ................................................................. ............... add 20

**(L)**    More than $25,000,000 ............................................................... ............... add 22

**(M)**    More than $65,000,000 ............................................................... ............... add 24

**(N)**    More than $150,000,000 ............................................................. ............... add 26

**(**    More than $250,000,000 ............................................................. ............... add 28



**O**
**)**

**(** More than $550,000,000 ........................................................ ................ add 30.
**P**
**)**

---

\* Notes to Table:

**(A) Loss.**--Loss is the greater of actual loss or intended loss.

**(B) Gain.**--The court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined.

**(C)** For purposes of this guideline--

**(i)** "Actual loss" means the reasonably foreseeable pecuniary harm that resulted from the offense.

**(ii)** "Intended loss" (I) means the pecuniary harm that the defendant purposely sought to inflict; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value).

**(iii)** "Pecuniary harm" means harm that is monetary or that otherwise is readily measurable in money. Accordingly, pecuniary harm does not include emotional distress, harm to reputation, or other non-economic harm.

**(iv)** "Reasonably foreseeable pecuniary harm" means pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense.

**(2)** (Apply the greatest) If the offense--

**(A)**(i) involved 10 or more victims; (ii) was committed through mass-marketing; or (iii) resulted in substantial financial hardship to one or more victims, increase by 2 levels;

**(B)** resulted in substantial financial hardship to five or more victims, increase by 4 levels; or

**(C)** resulted in substantial financial hardship to 25 or more victims, increase by 6 levels.

**(3)** If the offense involved a theft from the person of another, increase by 2 levels.

**(4)** If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by 2 levels.

**(5)** If the offense involved theft of, damage to, destruction of, or trafficking in, property from a national cemetery or veterans' memorial, increase by 2 levels.

**(6)** If (A) the defendant was convicted of an offense under 18 U.S.C. § 1037; and (B) the offense involved obtaining electronic mail addresses through improper means, increase by 2 levels.

**(7)** If (A) the defendant was convicted of a federal health care offense involving a government health care program; and (B) the loss under subsection (b)(1) to the government health care program was (i) more than $1,000,000, increase by 2 levels; (ii) more than $7,000,000, increase by 3 levels; or (iii) more than $20,000,000, increase by 4 levels.

**(8)** (Apply the greater) If--

**(A)** the offense involved conduct described in 18 U.S.C. § 670, increase by 2 levels; or

**(B)** the offense involved conduct described in 18 U.S.C. § 670, and the defendant was employed by, or was an agent of, an organization in the supply chain for the pre-retail medical product, increase by 4 levels.

**(9)** If the offense involved (A) a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency; (B) a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding; (C) a violation of any prior, specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines; or (D) a misrepresentation to a consumer in connection with obtaining, providing, or furnishing financial assistance for an institution of higher education, increase by 2 levels. If the resulting offense level is less than level 10, increase to level 10.

**(10)** If (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

**(11)** If the offense involved (A) the possession or use of any (i) device-making equipment, or (ii) authentication feature; (B) the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature; or (C)(i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, or (ii) the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

**(12)** If the offense involved conduct described in 18 U.S.C. § 1040, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

**(13)** If the defendant was convicted under 42 U.S.C. 408(a), 1011(a), or 1383a(a) and the statutory maximum term of ten years' imprisonment applies, increase by 4 levels. If the resulting offense level is less than 12, increase to level 12.

**(14)** (Apply the greater) If the offense involved misappropriation of a trade secret and the defendant knew or intended--

**(A)** that the trade secret would be transported or transmitted out of the United States, increase by 2 levels; or

**(B)** that the offense would benefit a foreign government, foreign instrumentality, or foreign agent, increase by 4 levels.

If subparagraph (B) applies and the resulting offense level is less than level 14, increase to level 14.

**(15)** If the offense involved an organized scheme to steal or to receive stolen (A) vehicles or vehicle parts; or (B) goods or chattels that are part of a cargo shipment, increase by 2 levels. If the resulting offense level is less than level 14, increase to level 14.

**(16)** If the offense involved (A) the conscious or reckless risk of death or serious bodily injury; or (B) possession of a dangerous weapon (including a firearm) in connection with the offense, increase by 2 levels. If the resulting offense level is less than level 14, increase to level 14.

**(17)** (Apply the greater) If--

**(A)** the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense, increase by 2 levels; or

**(B)** the offense (i) substantially jeopardized the safety and soundness of a financial institution; or (ii) substantially endangered the solvency or financial security of an organization that, at any time during the offense, (I) was a publicly traded company; or (II) had 1,000 or more employees, increase by 4 levels.

**(C)** The cumulative adjustments from application of both subsections (b)(2) and (b)(17)(B) shall not exceed 8 levels, except as provided in subparagraph (D).

**(D)** If the resulting offense level determined under subparagraph (A) or (B) is less than level 24, increase to level 24.

**(18)** If (A) the defendant was convicted of an offense under 18 U.S.C. § 1030, and the offense involved an intent to obtain personal information, or (B) the offense involved the unauthorized public dissemination of personal information, increase by 2 levels.

**(19)(A)** (Apply the greatest) If the defendant was convicted of an offense under:

**(i)** 18 U.S.C. § 1030, and the offense involved a computer system used to maintain or operate a critical infrastructure, or used by or for a government entity in furtherance of the administration of justice, national defense, or national security, increase by 2 levels.

**(ii)** 18 U.S.C. § 1030(a)(5)(A), increase by 4 levels.

**(iii)** 18 U.S.C. § 1030, and the offense caused a substantial disruption of a critical infrastructure, increase by 6 levels.

**(B)** If subparagraph (A)(iii) applies, and the offense level is less than level 24, increase to level 24.

**(20)** If the offense involved--

**(A)** a violation of securities law and, at the time of the offense, the defendant was (i) an officer or a director of a publicly traded company; (ii) a registered broker or dealer, or a person associated with a broker or dealer; or (iii) an investment adviser, or a person associated with an investment adviser; or

**(B)** a violation of commodities law and, at the time of the offense, the defendant was (i) an officer or a director of a futures commission merchant

or an introducing broker; (ii) a commodities trading advisor; or (iii) a commodity pool operator,

increase by 4 levels.

**(c)** Cross References

**(1)** If (A) a firearm, destructive device, explosive material, or controlled substance was taken, or the taking of any such item was an object of the offense; or (B) the stolen property received, transported, transferred, transmitted, or possessed was a firearm, destructive device, explosive material, or controlled substance, apply § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy), § 2D2.1 (Unlawful Possession; Attempt or Conspiracy), § 2K1.3 (Unlawful Receipt, Possession, or Transportation of Explosive Materials; Prohibited Transactions Involving Explosive Materials), or § 2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition), as appropriate.

**(2)** If the offense involved arson, or property damage by use of explosives, apply § 2K1.4 (Arson; Property Damage by Use of Explosives), if the resulting offense level is greater than that determined above.

**(3)** If (A) neither paragraph (1) nor (2) of this subsection applies; (B) the defendant was convicted under a statute proscribing false, fictitious, or fraudulent statements or representations generally (e.g., 18 U.S.C. § 1001, § 1341, § 1342, or § 1343); and (C) the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline

in Chapter Two (Offense Conduct), apply that other guideline.

(4) If the offense involved a cultural heritage resource or a paleontological resource, apply § 2B1.5 (Theft of, Damage to, or Destruction of, Cultural Heritage Resources or Paleontological Resources; Unlawful Sale, Purchase, Exchange, Transportation, or Receipt of Cultural Heritage Resources or Paleontological Resources), if the resulting offense level is greater than that determined above.

## CREDIT(S)

(Effective November 1, 1987; amended effective June 15, 1988; November 1, 1989; November 1, 1990; November 1, 1991; November 1, 1993; November 1, 1995; November 1, 1997; November 1, 1998; November 1, 2000; November 1, 2001; November 1, 2002; January 25, 2003; November 1, 2003; November 1, 2004; November 1, 2005; November 1, 2006; November 1, 2007; February 6, 2008; November 1, 2008; November 1, 2009; November 1, 2010; November 1, 2011; November 1, 2012; November 1, 2013; November 1, 2015; November 1, 2018; November 1, 2023; November 1, 2024.)

Federal Sentencing Guidelines, § 2B1.1, 18 U.S.C.A., FSG § 2B1.1
As amended to 3-15-22.

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.